$1,930 FAYETTEVILLE, N.C. 9th Nov., 1811.
Six months after date I promise to pay Mr. Hugh McLean, or order, $1,930, for value received, payable at the State Bank.
D. ANDERSON.
This note, on the same 9 November, was endorsed by Hugh McLean, the defendant, in blank, to the plaintiff and his partner.
On the day the note became due, it was presented by plaintiff's (510) agent to Anderson at Fayetteville, and payment demanded; to which Anderson replied he could not then pay it, but expected to do so in a few days; that it was unnecessary to present it at any of the banks, as he had no funds there to discharge it. And it was proved that when the note became due there were no funds of Anderson's at any of the banks.
It was proved that McLean endorsed the note without any consideration, except for the accommodation or as security of Anderson, as aforesaid. It further appeared in evidence that in August next after the note became due, Anderson mortgaged property to secure a debt due the Cape Fear Bank, to the amount of $4,525; and in the following month his property to the amount of $2,000 was sold by execution; and it was not proved that he was insolvent until ________ months after the note became due. The plaintiff's agent was at defendant's house in July or August next after the note became due, but gave no notice of its nonpayment; but in February or March following, defendant received notice, when he expressed great astonishment, and urged the plaintiff's agent to obtain the money, if possible, from Anderson, saying if he (McLean) had it to pay, it would ruin him. *Page 375 
In August, 1812, the note in question was placed by plaintiff's agent in the hands of an attorney, without further instructions than to institute suit against Anderson.
The attorney, supposing the property of the note to be in the agent, brought the suit in the name of Hugh McLean, to the agent's use, against David Anderson; and on the trial, without any authority or directions from the present plaintiff, or his agent, erased the name of Hugh McLean endorsed on the note.
The jury found all the issues in favor of the defendant. A motion was made for a new trial, which the court refused, and the plaintiff appealed to the Supreme Court.
The questions submitted to the Supreme Court are:
1. Does such an erasure as is mentioned in this case discharge (511) an endorser, otherwise liable?
2. Is the endorser of a note, who signs it to accommodate the maker, or his security, in the manner stated in this case, entitled to notice of its nonpayment?
3. If such notice be necessary, did not be subsequent conversation of defendant with plaintiffs' agent amount to a waiver of such notice? Or was the notice in February or March sufficient?
The counsel for the plaintiff has insisted that as the note was endorsed by the defendant without any valuable consideration, and merely for the accommodation of Anderson, the maker, and to give Anderson credit with the plaintiff, who received the note with knowledge that it had been endorsed with such intent, there was no necessity for notice of nonpayment to be given to the defendant. I am of a different opinion. Whatever may be the rule with respect to bills of exchange, where the drawer has no effects in the hands of the drawee, I think that in this respect the law with regard to promissory notes is otherwise. The difference arises from the forms of the undertakings. The cases relied on for the plaintiff are one from 1 Esp., 302, and De Best v. Atkinson, 2 H. Bl., 336. If the former be law, it is very distinguishable from this case. There the defendant, at the time of endorsing, expected to pay the note, and received the funds from the maker to do it with. But the latter authority has been chiefly pressed, and is a case that has been often urged on this point. It, too, is unlike the case before us. There the insolvency of the maker was known to all parties at the time of making and endorsing the note; and the opinion of the CHIEF JUSTICE is founded on that circumstance. But if it were expressly in (512) *Page 376 
point, the authority of it would not perhaps be entirely admitted. In a short time after that decision the doctrine of it came again under consideration, in Nicholson v. Douthil, 2 H. Bl., 609, and was, at least, shaken if not overruled.
In this last case the endorsement was made in execution of a previous agreement of the endorser to guarantee a debt of the maker, whose affairs were known at the time to be embarrassed, and who became insolvent before the note fell due. When the note became payable, the endorser knew that the maker could not pay it, and the impression of all parties was that the endorser was to pay it. In this case, strong as it was against the endorser, and great as the apparent justice of making him liable was, the Court admitted the distinction between a bill drawn without funds or credit and a promissory note of an insolvent maker — as to which latter the rule is laid down that notice of dishonor must in all cases be given. I believe this law has been considered as settled ever since, and that notice has in no case been dispensed with, unless perhaps it was on the express point of De Best v. Atkinson, that is, where the insolvency of the maker was known to all parties at the time of endorsement. And it may be doubted whether even that exception would be now allowed. For my own part, I cannot perceive, either in common sense or in the nature ofan engagement of an endorser, any reason why an endorser, who has had no benefit, and who accommodated with his credit the maker, to whom all the value went, should not be entitled to the strictest notice. But this case does not come within even the weakest of the foregoing authorities. Here is no connection between the maker and endorser. There was no understanding that McLean was to pay in the first resort. On the contrary, he was astonished when he understood that Anderson had not paid; and so far from there being an insolvency of the maker at the time of making or endorsing the note, or before or when it fell due, the case states that as late as August and September, 1812, he had visible estate to the value of $6,000 or $7,000. How, then, can it be supposed (513) that the defendant was considered as primarily liable to Smith for the payment of this note? All the acts of the plaintiff falsify such a presumption, as well as the condition of the maker when the note was made and fell due. When the note became payable, the plaintiff wanted his money. To whom did he apply? To Anderson. Upon whose request did he give further indulgence? Anderson's. And what was the inducement to forbear? Anderson's promise to make payment in a few days, as well as an unwillingness to affect his credit by protesting at bank, where, as Anderson told him, there were no funds to meet the note. Indeed, there could be no reason for McLean to undertake an immediate liability; there was no necessity to the plaintiff that he should *Page 377 
pay the note; the maker was well able to do it himself. On the particular circumstances, therefore, there is no hardship to the plaintiff; but there would be great hardship on McLean to dispense with a notice which, if it had been given to him, might and probably would have enabled him to save himself out of Anderson's effects. Regarding this point of the case, therefore, according to the particular facts, or testing it by the general principles of the law, I am clearly of opinion that the defendant was entitled to strict notice of nonpayment by the maker of the note.
But it is further contended that the conversation of the defendant with the plaintiff's agent, as stated in the case, amounted to a waiver ofnotice. I do not see any reason why it should. He certainly does notexpressly waive it, and I cannot perceive why we should imply it. But if he had expressly waived the want of notice, and even made a new promise, I do not know that the plaintiff could have recovered, either on the count on the endorsement or on the new promise. But there is no separate count on the promise. Indeed, according to my opinion already stated, the defendant had been previously discharged. Would not his promise, therefore, be nudum pactum and void? However, I do not say how I would think on that point, being of opinion that there is nothing like a promise of waiver of notice in the case stated. (514)
There is also another question which was not touched in the argument, and is against the plaintiff, in my opinion. The note was made payable at the State Bank. The holder of a bill with a special acceptance, payable at a particular place, must present it there, when it falls due; otherwise, the drawer is discharged. 7 East, 385. As between the holder and endorser, a promissory note payable at a particular place is quoad hoc, precisely like a bill with a special acceptance, as above, as between the holder and drawer. It is a part of the contract that the note should be presented at bank. Here, indeed, Anderson dispensed with such presentment. But that shall not affect McLean. His contract is that payment of the note should be demanded at the bank. How can we say that Anderson would not have found means to discharge the note at any sacrifice rather than suffer a public dishonor of his note by a protest at bank? Indeed, such a consideration might have induced the defendant originally to have the note made payable at bank. Be that as it may, the agreement was onspecial terms, and those terms must be complied with by the plaintiff before he seeks any remedy against the defendant.
I agree, therefore, with the court below upon all these points, and think the verdict was right. It is unnecessary for me to say anything on the other questions respecting the authority of the attorney to strike *Page 378 
out the defendant's endorsement, or the effect of such striking out, being in favor of the defendant on the other grounds.